IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

EDWIN R. THOMPSON and          :     CIVIL ACTION
KAREN J. THOMPSON              :
                               :
              v.               :
                               :
HORSHAM TOWNSHIP               :     NO. 07-5255

MEMORANDUM AND ORDER

McLaughlin, J.                              August 10, 2008


The plaintiffs live on a farm adjacent to a 40-acre parcel of land in Horsham Township.  A developer has filed an application to develop the parcel.  The plaintiffs contend that defendant Horsham Township has failed to comply with certain federal legal requirements concerning stormwater management and that the proposed development will cause flooding on their property.  The defendant has filed a motion to dismiss for lack of subject matter jurisdiction, arguing that the plaintiffs lack standing because the suit is premature and they have suffered no actual injury.  The Court agrees and will grant the motion to dismiss.


I.  Facts

    A.  The Thompsons and the Alter Tract

        Plaintiffs Edwin and Karen Thompson live on a farm in Horsham Township, the defendant.  A tributary of the Pennypack

Creek runs through the farm.  Immediately upstream from the
plaintiffs' farm is a 40-acre property called the Alter Tract.
Two unnamed streams that cross the Alter Tract converge at the
Tract's eastern boundary to form the tributary stream of the
Pennypack that crosses the plaintiffs' property.  One of these
streams flows from a drainage pipe that is part of the
defendant's stormwater system.  Compl. ¶¶ 16-19.

Intervenor defendants Orleans Homebuilders, Inc. and
Orleans Corporation ("Orleans", collectively) are developers.
Orleans has filed plans with the township to develop the Alter
Tract and subdivide it into single family homes.  The complaint
alleges that the proposed development of the Alter Tract will
damage the plaintiffs' property through flooding and erosion and
will harm their springhouse.  The plaintiffs use and enjoy the
Pennypack tributary on their property and the Pennypack watershed
generally.  They allege that the stream on their property
enhances its value and maintains the functionality of their
springhouse.  They claim that they have spent money to protect
the tributary on their property by installing fencing to keep
their cows out of the stream and planting trees to stabilize its
banks.  Id. ¶¶ 1, 12 20-25.

The plaintiffs allege that the defendant's failure to
comply with applicable laws concerning stormwater drainage has

increased the risk of flooding from the tributary stream of the
Pennypack that crosses their property.

   B.   Federal and State Regulation of Municipal Storm Sewage
        Systems

        The Federal Water Pollution Control Act, also known as
the Clean Water Act, prohibits the discharge of any pollutant
from a point source to the waters of the United States without an
National Pollutant Discharge Elimination System ("NPDES") permit.
33 U.S.C. §§ 1311, 1342(p).  On December 8, 1999, the
Environmental Protection Agency ("EPA") extended the NPDES
permitting regime to Municipal Separate Storm Sewer Systems
("MS4s"), which are systems serving less than 100,000 persons.
Horsham Township's storm sewer system is an MS4.  Compl. ¶¶ 26,
31; 64 Fed. Reg. 68,722.

        Under the NDPES program, the EPA has directed operators
of small MS4 programs to implement and enforce a stormwater
management program designed to reduce the discharge of pollutants
to the maximum extent practicable, including best management
practices.  Compl. ¶ 32; 40 CFR pt. 122.34; 64 Fed. Reg. 68,731;
Def.'s Br. Ex. 1 (EPA MS4 Fact Sheet).

        A stormwater management program is required to have six
"minimum control measures" or "MCMs":  1) public education and
outreach on storm water impacts; 2) public involvement and

participation; 3) illicit discharge detection and elimination; 4) construction site stormwater runoff control; 5) post-construction stormwater management in new development and redevelopment; 6) pollution prevention/good housekeeping for municipal operations. Compl. ¶ 33-34; 40 C.F.R. pts. 122.26-37; 64 Fed. Reg. 68,748.

With respect to the third MCM of illicit discharge detection, the EPA requires a permittee to develop a storm system map, showing the location of all outfalls and names and locations for all waters of the United States that receive discharges from those outfalls.  With respect to the fifth MCM of post-construction stormwater management, the EPA requires a permitee to:

> (1) develop and implement strategies which include a combination of structural and/or non-structural best management practices (BMPs) appropriate for the community; 2) use an ordinance or other regulatory mechanism to address post-construction runoff from new develoment and redevelopment projects to the extent allowable under State Tribal or local law.

Compl. ¶¶ 31, 35, 36; 40 C.F.R. pt. 122.34(b)(5)(ii)(B); 64 Fed. Reg. 68,759-60; 64 Fed. Reg. 68,753-56.

The Pennsylvania Department of Environmental Protection ("PennDEP") has been delegated authority by the EPA to issue permits for storm water systems.  PennDEP issued a NPDES permit to the defendant to operate a category "MS4" storm system and to

discharge storm water into the waters of the United States.
Compl. ¶¶ 29, 56; 56 Fed. Reg. 41,687.

C.    Changes Made to Horsham Township's Subdivision
      <u>Ordinance to Comply with Federal and State Laws</u>

1.    <u>Section 611 as amended by Ordinance 4017</u>

On December 8, 1999, the defendant enacted section 611
of its Subdivision and Land Development Ordinances
("Ordinances"), which provided the framework for its review and
approval of proposed subdivisions.  Section 611 was enacted
through Ordinance 4017.  It required that developers construct or
install drainage structures to:  1) prevent erosion and
satisfactorily carry off or detain and control the rate of
release of stormwater; 2) handle the anticipated peak discharge
of stormwater from the property; and 3) maintain and improve the
existing water quality of receiving waterways.  Section 611
specifically prohibited development that generates more runoff in
the post-development condition than the site did in its natural
condition.  Compl. ¶ 37.

2.    <u>Section 611, as amended by Ordinance 4019</u>

On October 19, 2002, the defendant again amended
section 611 through Ordinance 4019.  This amendment was in
response to PennDEP's promulgation of a Comprehensive Stormwater

5

Management Policy in September 2002.  Section 611, as amended by Ordinance 4019, specified further standards for stormwater management and required applicants for subdivision and land development to provide for the future maintenance of stormwater management facilities.  Compl. ¶¶ 40, 42.

### 3.   The Township's 2003 Notice of Intent

In December 2002, PennDEP promulgated an MS4 Stormwater Management Program Protocol for use by MS4 municipalities.  The Protocol requires a municipality to complete a map of its storm sewer outfalls and receiving surface water bodies within the first year of its NPDES Permit.  It also requires that a municipality enact, implement, and enforce a stormwater control ordinance applicable to all development and redevelopment activities which involve earth disturbance of five acres or more. Post-construction stormwater controls must meet certain water quality requirements.  Compl. ¶¶ 43, 45-47; Def.'s Br. Ex. 4.

PennDEP incorporated the Protocol into an NPDES General Permit, PAG-13, issued in December of 2002.  The General Permit reiterates that MS4 municipalities may use all or portions of the Protocol to meet their permit requirements, but that if a municipality does not use the Protocol, it must develop its own plan which must be approved by PennDEP.  Compl. ¶¶ 27, 49; Def.'s Br. Ex. 5.

On April 29, 2003, the defendant issued a Notice of
Intent ("NOI") to be covered under General Permit PAG-13.  In the
NOI, the defendant indicated that it would follow PennDEP's
protocol as to five of the six MCMs required under the NPDES
program, but for the MCM of post-construction stormwater
management, it would apply section 611, as modified by Ordinance
4019.  Compl. ¶¶ 48, 51-53.

One day earlier, on April 28, 2003, PennDEP issued the
defendant an NDPES permit, number PAG130157.  In doing so,
PennDEP approved the NOI and authorized the defendant to
discharge stormwater subject to the terms and conditions of the
Permit and the NOI.  Compl. ¶ 56.


D.    Orleans' Applications to Develop the Alter Tract

On July 16, 2001, Orleans submitted an application
("2001 Plan") to the Township proposing the subdivision and
development of the Alter Tract.  This application was submitted
before the Township amended its Subdivision Ordinances in 2002
through Ordinance 4019.  Under the 2001 Plan, the Alter Tract
would be subdivided into twenty-four lots and would be developed
with twenty-two single family dwellings and a road.  Compl. ¶ 39.

The defendant issued a conditional use approval for the
2001 Plan.  The plaintiffs challenged that decision in state
court but were ultimately unsuccessful.  In re Thompson, 896 A.2d

7

659 (Pa. Commw. Ct. 2006), alloc. den. 916 A.2d 636 (Pa. 2007).

As a result of the delay, another Orleans entity, OHB Builders, Inc., submitted an alternative plan on February 8, 2006 ("2006 Plan"), that would subdivide the Alter Tract into twenty-one lots with twenty single family dwellings and a road. Both plans are pending before the township. Compl. ¶ 64.

> E.   The Parties Dispute Which Version of the Subdivision Ordinance Should Apply to the Plans to Develop the Alter Tract

The defendant contends that it is bound by the Pennsylvania Municipal Planning Code which states that:

> From the time an application for approval of a plan, whether preliminary or final, is duly filed as provided in the subdivision and land development ordinance, and while such application is pending approval or disapproval, no change or amendment of the zoning, subdivision, or governing ordinance or plan shall affect the decision on such application adversely to the applicant and the applicant shall be entitled to a decision in accordance with the provisions of the governing ordinances or plans as they stood at the time the application was duly filed.

53 Pa. Stat. Ann. § 10508(4)(i).

The plaintiffs contend that the defendant is required to enforce Ordinance 4019 against both the 2001 Plan and the 2006 Plan under the terms of the NDPES permit. In addition, the plaintiffs allege that the defendant violated its NPDES permit by failing to include the Pennypack tributary on their property and

the outfall on the Alter Tract on the Township's MS4 Storm Sewer
Map required under the Permit.  The complaint says that PennDEP
issued notices of violations to the Township in July of 2005,
September of 2005, and March of 2006, stating that it had failed
to comply with various reporting requirements under the Permit.
Compl. ¶¶ 57, 58, 60.

        The plaintiffs' counsel has written numerous letters
informing the defendant of the inaccuracies on its MS4 Map and
what the plaintiffs contend is the requirement that the defendant
enforce Section 611 as amended by Ordinance 4019 against both
development plans.  On August 30, 2007, the Horsham Township
engineer issued a preliminary plan review of the 2006 Plan that
did not use the criteria in Section 611 as amended by Ordinance
4019.  By letter dated September 24, 2007, the Township solicitor
told the plaintiffs that the defendant would not be applying
Section 611 as amended by Ordinance 4019 to the 2001 Plan because
the Plan was filed before the amendments.  Compl. ¶¶ 62, 65, 66,
69.

        In a footnote in its motion to dismiss, the defendant
says that it believes it is bound to apply the earlier version of
Section 611 as amended through Ordinance 4017 only to the 2001
Plan.  It says it will apply the later version of Section 611 as
amended through Ordinance 4019 to the 2006 Plan.  At oral
argument on June 12, 2008, defendant's counsel reported that the

defendant now takes no position as to which ordinance should apply.  Both plans remain pending before the defendant.  Def.'s Br. at 19 n.7; Oral Arg. Tr. at 36, 46, June 12, 2008.

     F.   The Claims in this Suit

The plaintiffs filed this suit on December 14, 2007. They allege that the defendant has violated provisions of:

1) the Federal Water Pollution Control Act, also known as the Clean Water Act, 33 U.S.C. § 1251 et seq., specifically §§ 1311 and 1365, and implementing regulations at 40 C.F.R. pts. 122 and 123;

2) the Pennsylvania Clean Streams Law, 35 Pa. Stat. Ann. § 691.1 et seq. and accompanying regulations at 35 Pa. Code chs. 92, 93, and 102;

3) and the terms and conditions of the defendant's MS4 NPDES Permit No. PAG130157.

The plaintiffs allege they gave the notice to the EPA of their intent to file suit as required by 33 U.S.C. § 1365(b)(1)(A).  The plaintiffs seek:

1) a declaratory judgement that the Township has violated its NPDES permit;

2) an order mandating that the Township apply the provisions of Ordinance 4019 to "any and all unapproved subdivision plans

which have been filed or may be filed in respect to the Alter
Tract";

3) an order requiring the Township to provide a copy of all
reports submitted to the EPA or PennDEP regarding the Township's
permit compliance for a period of two years from the date of the
order;

4) an order requiring the Township to produce a complete and
accurate MS4 map within 60 days;

5) and order requiring the Township to pay per diem civil
penalties under the Act; and

6) an order awarding attorneys' fees.


II.  Analysis

     The defendant has filed a motion to dismiss under Fed.
R. Civ. P. 12(b)(1), for lack of subject matter jurisdiction;
12(b)(6), for failure to state a claim upon which relief can be
granted; and 12(b)(7), for failure to join an indispensable
party.[1]  The defendant also seeks dismissal under Fed. R. Civ. P.
12(c), judgment on the pleadings.  Under Rule 12(b) the Court
accepts well-pleaded allegations and reasonable inferences as
true, and construes the complaint in the light most favorable to

---

[1]     Orleans filed a Motion to Intervene (Docket No. 16) on
April 14, 2008.  The Court granted the motion on June 11, 2008.
Therefore, the motion to dismiss for failure to join an
indispensable party under Fed. R. Civ. P. 12(b)(7) is denied as
moot.

the non-moving party.  If the complaint does not allege
sufficient facts which, if proven, would entitle the plaintiffs
to relief as a matter of law, then the Court will dismiss the
complaint.  See Ransom v. Marazzo, 848 F.2d 398, 401 (3d Cir.
1998).  The Court may consider attachments to the complaint as
well as matters that are publicly available or subject to
judicial notice.  Matters outside the pleadings may also be
considered on a motion to dismiss for lack of jurisdiction under
Rule 12(b)(1).  See Robinson v. Dalton, 107 F.3d 1018, 1021 (3d
Cir. 1997).

        The Court will grant the defendant's motion to dismiss
for lack of subject matter jurisdiction because the plaintiffs
lack standing to bring their claim and because the action is not
yet ripe for adjudication.  The plaintiffs' claims of reporting
and mapping violations are moot.


    A.  Standing

        Article III of the Constitution limits federal
jurisdiction to cases and controversies.  The doctrine of
standing identifies those disputes which are appropriately
resolved through the judicial process.  See Lujan v. Defenders of
Wildlife, 504 U.S. 555, 560 (1992) (citing Whitmore v. Ark., 495
U.S. 149, 155 (1990)).  Constitutional standing requires that the
plaintiff have an actual or imminent injury that is fairly

traceable to the defendant and can be redressed by the court.
<u>Id.</u>

The defendant argues that the plaintiffs lack standing
to bring their claims because they have not shown an actual or
imminent injury, and because the defendant has yet to rule on
either of the pending plans for development of the Alter Tract,
and therefore there is no final administrative action for the
Court to review.[2]  The plaintiffs contend that they have standing
because of the permissive citizen suit provisions of the Clean
Water Act.  The parties disagree as to which standing analysis
the Court should use:  the plaintiffs argue that they do not have
to meet the exacting standing requirements cited by the defendant
because they seek to address a procedural injury that threatens
the use and enjoyment of their land.  The defendant argues that
the plaintiffs' alleged injury is not procedural, and that the
Court should examine the plaintiffs' claims under the <u>Lujan</u>
framework.  Def.'s Br. at 9-10; Pls.' Opp. at 6, 8.


1.   <u>Procedural Standing</u>

The Supreme Court has said that the requirements of
standing may be lessened when a plaintiff has suffered a
procedural injury:  "The person who has been accorded a

---

[2]     The Court will address the ripeness of the plaintiffs'
claims below in section II.B.

13

procedural right to protect his concrete interests can assert
that right without meeting all the normal standards for
redressability and immediacy." Lujan, 504 U.S. at 573 & n.7.
When a plaintiff is vested with a procedural right, that
plaintiff has standing to sue "if there is some possibility that
the requested relief will prompt the injury-causing party to
reconsider the decision that allegedly harmed the litigant."
Mass. v. EPA, 127 S. Ct. 1438, 1453 (2007).

        To establish procedural standing, a plaintiff must
allege that:  1) the defendant violated certain procedural rules;
2) these rules protect the plaintiff's concrete interests; and 3)
it is reasonably probable that the challenged action will
threaten those concrete interests.  Citizens for Better Forestry
v. U.S. Dep't of Agric., 341 F.3d 961, 969-70 (9th Cir. 2003).
In Lujan, the Supreme Court gave an example of a situation that
would give rise to procedural standing:

> [O]ne living adjacent to the site for proposed
> construction of a federally licensed dam has standing
> to challenge the licensing agency's failure to prepare
> an environmental impact statement, even though he
> cannot establish with any certainty that the statement
> will cause the license to be withheld or altered, and
> even though the dam will not be completed for many
> years.

504 U.S. at 573 n.7.  The Court clarified further that a
plaintiff can enforce procedural rights only if the procedures
are designed to protect a concrete interest that is the ultimate
basis of the plaintiff's standing.  Id. at 573 n.8.

The plaintiffs in this case claim that their situation is analogous to the situation the Supreme Court described in Lujan and other cases in which plaintiffs challenged defendants' failure to follow mandated procedures.  See, e.g., Nulankeyutmonen Nkihtaqmikon v. Impson, 503 F.3d 18, 25 (1st Cir. 2007) (finding that a tribal plaintiff had procedural standing when it claimed that the Bureau of Indian Affairs failed to prepare an environmental assessment or provide an opportunity for public comment before allowing a long-term lease of tribal land for energy development); Tex. Indep. Producers & Royalty Owners Assoc. v. EPA, 410 F.3d 964, 977 (7th Cir. 2005) (holding that an environmental organization had procedural standing to challenge the EPA's failure to mandate public availability of a notice of intent and a stormwater pollution prevention plan and its failure to provide the opportunity for a public hearing).

The plaintiffs say that their injury is procedural: the defendant's failure to apply Ordinance 4019 to the 2001 Plan, which, according to the plaintiffs, violates the terms of its NPDES permit.  They cite Impson for the proposition that a procedural injury has already occurred when a government body expresses an intention to violate procedures that are meant to minimize the impact of development on the environment.  Pls.' Opp. at 11; Oral Arg. Tr. at 15, June 12, 2008.

15

The defendant says that the plaintiff is not eligible for the lessened requirements of procedural standing, arguing that the Clean Water Act's citizen suit provision does not mean that every claim under the Act states a procedural injury for standing purposes.  The defendant points out that many of the cases the plaintiff cites are not suits under the Clean Water Act, but rather suits under the National Environmental Policy Act, 42 U.S.C. §§ 4321 et seq. ("NEPA"), which mandates specific procedures for federal agencies.  For example, the plaintiff cites City of Sausalito v. O'Neill, 386 F.3d 1186 (9th Cir. 2004), in which the court held that the plaintiff had standing because the NEPA required federal agencies to engage in certain environmental assessments (including preparation of environmental impact statements) that the defendant agency had skipped.  The defendant also points to Mass. v. Watt, 716 F.2d 946 (1st Cir. 1983), which distinguishes between the NEPA and substantive environmental statutes.  The court said that the NEPA was designed to influence the decision-making process, and therefore, when a decision is made without the "informed environmental consideration" required by the statute, the harm that the statute intends to prevent has been suffered.  Id. at 952.  The court contrasted the NEPA with the Clean Water Act, which focuses upon the integrity and cleanliness of the country's waters, not the permit process.  Id.

16

In Texas Indep. Producers, the United States Court of Appeals for the Seventh Circuit distinguished between procedural standing and substantive standing.  The court found that the plaintiff did not have standing to challenge the substantive provisions of a storm water discharge permit, because it did not establish that any stormwater had actually been discharged into the water bodies at issue or show that discharges had caused the complained-of injury.  The plaintiff did have procedural standing, however, to challenge the EPA's failure to follow mandated procedures (a public hearing and public availability of a notice of intent and a stormwater pollution prevention plan). 410 F.3d at 974-76, 977.

The plaintiffs in this case have no such procedural challenge.  They object to the substance of the defendant's decision (albeit a decision not yet made), not the defendant's procedures.  The plaintiffs claim that the defendant has violated its NDPES permit by failing to apply the higher standards of Ordinance 4019 to the 2001 Plan.  This is not the vindication of a procedural right, such as the right to have an environmental impact statement prepared (the example the Supreme Court gave in Lujan) or to have a period of public comment, as in Impson.  The plaintiffs do not contend that the defendant has skipped a particular rulemaking step required by the statute; rather, they seek to have the defendant apply a particular legal standard in

17

ruling on the development plans.  The question of what legal standard should apply to a land use decision is substantive, not procedural.

When a plaintiff is vested with a procedural right, that plaintiff has standing to sue "if there is some possibility that the requested relief will prompt the injury-causing party to reconsider the decision that allegedly harmed the litigant." Mass. v. EPA, 127 S. Ct. 1438, 1453 (2007).  Not only are the plaintiffs not vested with a procedural right in this case, the defendant has made no such decision, because it has not approved either development plan.  The plaintiffs are not eligible for the less stringent requirements of procedural standing.

### 2.   Standing under Lujan

The plaintiffs' claims must be considered using the constitutional standing factors from Lujan.  The "irreducible constitutional minimum" of standing has three elements:  First, the plaintiff must have suffered an "injury in fact," an invasion of a legally protected interest that is both "concrete and particularized" and "actual or imminent, not conjectural or hypothetical."  Second, there must be a causal connection between the injury and the conduct complained of – the injury must be fairly traceable to the challenged action of the defendants and not the result of the independent action of some third party not

before the court.  Third, it must be likely, rather than
speculative, that the injury will be redressed by a favorable
decision.  Lujan, 504 U.S. at 560 (internal citations and
quotations omitted); see also Friends of the Earth, Inc. v.
Laidlaw Environmental Servs., Inc., 528 U.S. 167 (2000).

        The plaintiffs cannot make out the first element of
standing:  they have not suffered an injury in fact that is both
concrete and particularized and actual or imminent, not
conjectural or hypothetical.  Id.  The plaintiffs are worried
about the threat posed to their land if the development of the
Alter Tract proceeds under the 2001 Plan, reviewed under
Ordinance 4017.  When a plaintiff claims that a threatened injury
is the source of standing, the plaintiff must show that the
threatened injury is so imminent that it is "certainly
impending."  Pub. Interest Research Group v. Magnesium Elektron,
Inc., 123 F.3d 111, 122 (3d Cir. 1997) (quoting Whitmore v. Ark.,
495 U.S. 149, 155-58 (1990)).

        The plaintiffs' claimed injury depends on a series of
future events, none of which are "certainly impending":  the
defendant would have to review the pending plans under Section
611 as amended by Ordinance 4017 rather than by Ordinance 4019;
the plan would have to be approved without the additional
requirements of Ordinance 4019; Orleans would need to receive
other permits (including an NPDES permit and a construction

19

permit); the development would need to be built; and after all of those steps, flooding might occur and damage the plaintiffs' property near the Alter Tract.

This is too speculative to be an imminent injury.  The plaintiffs cite Ecological Rights Fdn. v. Pac. Lumber Co., 230 F.3d 1141, 1149 (9th Cir. 2000), for the proposition that fear of future harm can support standing.  This is true as far as it goes.  In Ecological Rights Fdn., however, it was undisputed that runoff from Pacific Lumber's two facilities drained into a creek and other downstream waterways.  The plaintiffs had not established that the creek was polluted by the runoff, but they feared such pollution and curtailed swimming and fishing in the creek.  Id.  In this case, the development that the plaintiffs fear will lead to flooding has yet to be built.  There is no certainty that it ever will be built; the defendant has not even reviewed the plans for development yet.  This is not the kind of future harm the Ecological Rights Fdn. court considered when it held that the plaintiff had standing to sue.

The plaintiffs claim that they have already been injured and incurred costs to protect against stormwater runoff: they have installed fencing to keep their cattle out of the stream and planted trees along the stream to stabilize its banks. Pls.' Opp. at 15.  This alleged injury is not fairly traceable to the actions of the defendant.  The plaintiffs have not alleged

that the defendant is responsible for all flooding in the Pennypack Creek Watershed; indeed, Horsham Township is not the only municipality whose policies affect the Watershed.  Compl. ¶ 13.  If an injury is not fairly traceable to the actions of a defendant, it cannot support standing.  Lujan, 504 U.S. at 573.

The plaintiffs have not alleged an actual injury that is "imminent, not conjectural or hypothetical."  Id. at 560.  The flooding the plaintiffs' fear is speculative, and the injuries they claim to have already suffered are not fairly traceable to the actions of the defendant.  The plaintiffs do not have standing to sue.

B.  Ripeness

Even if the plaintiffs did have standing to sue, their claims are not yet ripe.  The ripeness doctrine serves to determine whether a party has brought an action prematurely.  If a dispute is not yet ripe, a court should abstain from ruling until the dispute is sufficiently concrete to satisfy the constitutional and prudential requirements of the doctrine. County Concrete Corp. v. Twp. of Roxbury, 442 F.3d 159, 164 (3d Cir. 2006) (citing Khodara Envtl., Inc. v. Blakey, 376 F.3d 187, 196 (3d Cir. 2004)).  The United States Court of Appeals for the Third Circuit has held that ripeness is at least partially grounded in Article III's requirement of a case or controversy.

<u>Taylor Inv., Ltd. v. Upper Darby Twp.</u>, 983 F.2d 1285, 1290 n.6 (3d Cir. 1993) (citing <u>Armstrong World Indus. v. Adams</u>, 961 F.2d 405, 411 n.12 (3d Cir. 1992)).  In the Third Circuit, unripe claims should be disposed of on a motion to dismiss.  <u>Id.</u> at 1290.

        The defendant has not given even preliminary approval to either the 2001 Plan or the 2006 Plan.  A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all. <u>Tex. v. United States</u>, 523 U.S. 296, 300 (1998) (internal quotations omitted).  As the Court discussed in the section on standing, the plaintiffs' claim is based on multiple future events that may not occur as anticipated or indeed, at all.  The injury the plaintiffs fear will only come about if:  the defendant reviews the 2001 Plan under Ordinance 4017 instead of Ordinance 4019; the defendant then approves the plan based on that review without imposing any additional stormwater requirements; Orleans gets all of the other permits and approvals it needs before it starts construction; Orleans builds the proposed subdivision; and the stormwater management practices in place after construction are not sufficient to protect the plaintiffs' nearby property from flooding.  Compl. ¶¶ 25, 65, 67, 68, 71.

In land use cases, a property owner's claim is not ripe until state authorities have the opportunity to reach a final, definitive position as to how they will apply a particular regulation to a piece of land. <u>Taylor</u>, 983 F.3d at 1291 (citing <u>Williamson Planning Comm. v. Hamilton Bank</u>, 473 U.S. 172, 191 (1985)). Courts require such finality, according to the <u>Taylor</u> court, because land use regulation affects so many people and social interests, and local political bodies are better able to assess the burdens and benefits of the regulations than federal courts. <u>Id.</u>

The <u>Taylor</u> court held that a plaintiff's complaint about the revocation of a permit by a zoning officer was not ripe because the defendant township had not rendered a final decision on the permit, and because the zoning board was free to consider any new facts and circumstances of the permit application, even after the officer denied the permit. <u>Id.</u> at 1293. In <u>Acierno v. Mitchell</u>, 6 F.3d 970 (3d Cir. 1993), the court held that although the defendant county had made a final decision with respect to the plaintiff's development plans, the plaintiff sought redress for the denial of a building permit. Because the permit decision was appealable to the Board of Adjustment, and only the Board had final authority to interpret the regulation, there could be no final judgment before the Board issued its decision. The court held that the claim was not ripe. <u>Id.</u> at 976.

In this case, the defendant's approval or denial of either of the two development plans is only the first in a series of potential administrative decisions.  If the defendant approves one of the plans, the plaintiffs could seek a final adjudication of that approval pursuant to the Pennsylvania Municipalities Planning Code.  After that, the plaintiffs could seek a stay of the approval while judicial proceedings are pending in the Court of Common Pleas.  53 Pa. Stat. Ann. §§ 10908(3), 10909.1, 11002-A, 11003-A.

The township's own administrative decisions are not the only ones to affect the fate of the proposed development: Orleans would need to obtain its own NPDES permit from PennDEP prior to beginning construction and implement an erosion control program.  Orleans' construction permit would have to address post-construction stormwater runoff.  The DEP approval of the NPDES permit is itself reviewable through a state administrative process, by appeal to the Pennsylvania Environmental Hearing Board.  Pennsylvania Clean Streams Law, 35 Pa. Stat. Ann. § 691.7(a); 25 Pa. Code §§ 92, 93, 102; Def.'s Br. Ex. 4 (DEP Protocol, at 2-3).

The plaintiffs' claims rests on contingent, future events that may or may not occur, and therefore are not ripe for adjudication.

C.  Ancillary Claims

       The plaintiffs allege that the defendant has violated
the mapping and reporting requirements in the defendant's NPDES
permit.  Compl. ¶¶ 70, 72.  The defendant says that neither
violation is continuing, and therefore the plaintiffs fail to
state a claim.  The United States Supreme Court has held that the
Clean Water Act does not allow citizen suits for "wholly past
violations."  Gwaltney of Smithfield, Ltd. v. Chesapeake Bay
Fdn., Inc., 484 U.S. 49, 64 (1987).


       1.  Mapping Violations

       The plaintiffs claim that the defendant has violated
its NPDES permit by failing to include the two tributaries of the
Pennypack Creek that join on the Alter Tract and flow as a single
tributary through their property, and by failing to identify a
drainage pope outfall along Welsh Road in the Alter Tract.  The
MS4 Rule requires that a map or set of maps show the locations of
all outfalls and the names and locations of receiving waters.
Compl. ¶ 60; 64 Fed. Reg. 68,756.

       The defendant argues that it has corrected these errors
and that therefore the plaintiffs' claims are moot.  It attaches
to its motion to dismiss an affidavit from the Township manager
confirming the map corrections and the revised MS4 map, which
includes the Pennypack Creek tributary, its branches, and the

outfalls.[3]  The plaintiffs counter with an affidavit from an
engineer saying that the map is still inaccurate.  Def.'s Br. Ex.
6, Affidavit of Michael McGee, Horsham Township Manager, App. A;
Pl.'s Opp. Br. at 2, Ex. A, Affidavit of Paul D. Erfle.

        The plaintiffs' affidavit does not address the defects
outlined in the complaint.  Instead, it identifies another
alleged defect – the failure of the map to show a watercourse in
the northern quadrant of the Alter Tract.  According to the
affidavit, the watercourse can be identified from an aerial
photograph of the Tract, and it is identified on the development
plans submitted to the defendant.  Id. ¶¶ 4-7.

        The Court considers only the allegations that were in
the complaint.  The watercourse in the northern quadrant was not
part of the complaint.  Even if the Court could consider this new
problem with the map, the standard that the EPA requires for an
MS4 map is that it show the location of all outfalls and the
names and locations for "all waters of the United States" that
receive discharges from those outfalls.  64 Fed. Reg. 68,753-56.
The plaintiffs have not alleged that the watercourse missing from
the map is a "water of the United States," or that it receives

---

        [3]     As discussed above, the Court can consider matters
outside the complaint when deciding a motion to dismiss for lack
of jurisdiction under Fed. R. Civ. P. 12(b)(1), without
converting the motion into a motion for summary judgment.  At
oral argument both parties agreed that the Court should consider
the affidavits.  Oral Arg. Tr. at 34, June 12, 2008.

discharges from the outfalls of the MS4 storm sewer system.  Oral Arg Tr. at 26-32, June 12, 2008.

The defendant's revision of the map moots the plaintiffs' claim of a mapping violation.

2.  <u>Reporting Violation</u>

The complaint alleges that the defendant failed to meet reporting requirements under the NPDES permit in July of 2005, September of 2005, and March of 2006.  PennDEP issued notices to the defendant on each violation.  The defendant argues that these are only intermittent past violations and therefore cannot support a suit under <u>Gwaltney</u>.  The plaintiffs did not respond to the defendant's arguments in either their opposition to the motion to dismiss or at oral argument.  Compl. ¶ 72; Def.'s Reply at 2; Oral Arg. Tr. at 25, 33, June 12, 2008.

Wholly past violations are insufficient to purse a citizen's suit under the Clean Water Act, and the plaintiffs have not alleged any further or ongoing violations.  The plaintiffs' reporting claims are therefore moot.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


EDWIN R. THOMPSON and        :       CIVIL ACTION
KAREN J. THOMPSON            :
                             :
              v.             :
                             :
HORSHAM TOWNSHIP             :       NO. 07-5255


ORDER


AND NOW, this 10th day of August, 2008, upon consideration of the defendant's Motion to Dismiss (Docket No. 9), and the opposition and reply thereto, IT IS HEREBY ORDERED, for the reasons set forth in the accompanying Memorandum of Law, that the defendant's motion to dismiss for lack of subject matter jurisdiction is GRANTED.

This case is CLOSED.



BY THE COURT:



/s/ Mary A. McLaughlin
MARY A. McLAUGHLIN, J.